IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| DALLAS R. MCCLAIN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:20-CV-695 |
| | ) | |
| JEFFREY A. TRENDEL, In His Individual Capacity; JOHN CABLE, In His Individual Capacity; STEVE BRYANT, In His Individual Capacity; and MARTY SUMNER, In His Individual Capacity, | ) ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

## **MEMORANDUM OPINION AND ORDER**

Catherine C. Eagles, District Judge.

The plaintiff, Dallas McClain, moves for leave to file an amended complaint asserting a Fourth Amendment claim. Because the amended complaint fails to state a claim on which relief can be granted, it would be futile to grant the motion.

### **Procedural History**

In his original complaint, Mr. McClain brought eight causes of action against employees and officials of the North Carolina Departments of Insurance and Justice based on regulatory actions taken against Cannon Surety, LLC, a bail bond surety business in which Mr. McClain claims an indirect ownership interest. The Court granted the defendants' motion to dismiss as to the three federal causes of action and declined to exercise supplemental jurisdiction over the remaining state claims. *See* Doc. 19 at 14.

The Court deferred entering judgment for 14 days to give Mr. McClain an opportunity to amend the complaint to add more factual detail and specificity to his § 1983 claim based on the Fourth Amendment. *See id.* at 14–15. Pursuant to Fed. R. Civ. P. 15(a), Mr. McClain timely moved to amend the complaint. Doc. 20. The proposed complaint reasserts his § 1983 Fourth Amendment claim and various state tort claims arising out of the search of Cannon's business premises, naming four state employees in their individual capacities as defendants. Doc. 20-1. The defendants object, contending that the amendment would be futile. Doc. 22.

## Discussion

Federal Rule 15(a)(2) allows a party to amend its pleading over objection with leave of the court, and "[t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Courts may deny leave to amend a pleading if the amendment would be futile. *Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006). A proposed amendment is futile "if the claim it presents would not survive a motion to dismiss." *Save Our Sound OBX, Inc. v. N.C. Dep't of Trans.*, 914 F.3d 213, 228 (4th Cir. 2019); *see Perkins v. United States*, 55 F.3d 910, 917 (4th Cir. 1995).

### A. Fourth Amendment Claim

Mr. McClain alleges that when the defendants executed a state court seizure order at Cannon's business premises, they exceeded the scope of the order by taking and keeping his personal property. Doc. 20-1 at ¶¶ 41, 61, 74. This warrantless seizure, he asserts, violated his Fourth Amendment rights to be secure in his papers and effects against unreasonable searches and seizures.

2

1. **Allegations of the Proposed Amended Complaint**

Mr. McClain alleges the following material facts, which the Court summarizes and takes as true for purposes of this motion.

In September 2017, the Department of Insurance filed a verified petition for an order of rehabilitation and seizure order of Cannon Surety, LLC. *Id*. at ¶ 17. The Department asserted that Cannon was a licensed surety, that it was failing to comply with applicable state laws and requirements, and that there was reasonable cause to believe that many financial irregularities threatened Cannon's solvency and endangered the policyholders, creditors, and the public. *See id*. at ¶ 17 (citing Doc. 20-1 at pp. 24–53). Pursuant to N.C. Gen. Stat. § 58-30-65, the Wake County Superior Court issued a seizure order authorizing DOI to take possession and control of "the premises occupied by [Cannon] for transaction of its business," and "all of the property, books, accounts, documents, and other records" of Cannon. *Id*. at ¶ 19, pp. 57–58.

On September 28, 2017, the defendants came to Cannon's business premises to execute the seizure order. *Id*. at ¶ 33. Mr. McClain owns 75% of Premier Judicial Consultants, LLC, which owns 100% of Cannon. *Id*. at ¶¶ 24–25. Premier's offices were in the same space. *Id*. at ¶¶ 30–32. Mr. McClain and other employees and agents of Cannon and Premier were present. *Id*. at ¶¶ 35, 43. The offices were large, consisting of approximately 10,000 square feet and 21 rooms. *Id*. at ¶ 47. The defendants required Mr. McClain and others to remain in a conference room during the search. *Id*. at ¶ 43.

The defendants and others filled approximately 80 boxes with items of property from the premises. *Id*. at ¶ 51. During the day, Mr. McClain told the defendants that

certain items, unidentified in the complaint, belonged to him and not to Cannon, but the defendants nonetheless placed these objects in the boxes for removal. *Id.* at ¶¶ 55, 57. The defendants removed the 80 boxes from the premises, *id.* at ¶ 51, without preparing an inventory. *Id.* at ¶ 59. They have not provided Mr. McClain with an inventory of the items seized from the premises. *Id.* at ¶ 53.

Along with Cannon's property, the defendants took away many items of Mr. McClain's personal property, including computers, smart phones, cameras, a motorized coupon dispenser, hard drives, televisions, a drone quadcopter, a CD/DVD replicator, business signs, badges, pocketknives, keys, sunglasses, collectibles associated with a Wyndham marketing campaign, and software "written specifically for the bail industry." *See id.* at ¶ 61. They also seized and took away personal documents such as Mr. McClain's mail, personal tax records, and records relating to other businesses run by Mr. McClain. *Id.*

A little over two months after the search, unidentified DOI personnel allowed Mr. McClain to retrieve some of his personal items. *Id.* at ¶ 60. Despite his repeated requests to the defendants to return the many other personal items, *id.* at ¶ 64, they have not been returned and remain in the possession of the defendants and the Department of Insurance. *Id.* at ¶¶ 60, 65.

## 2. Overview of Applicable Law

The Fourth Amendment, made applicable to the States by the Fourteenth Amendment, *Ker v. California,* 374 U.S. 23, 30 (1963), provides in pertinent part that the "right of the people to be secure in their persons, houses, papers, and effects, against

4

unreasonable searches and seizures, shall not be violated." U.S. CONST. amend. IV. By its terms, the amendment applies to both searches and seizures. *Soldal v. Cook Cty., Ill.*, 506 U.S. 56, 63 (1992). A seizure of property "occurs when there is some meaningful interference with an individual's possessory interests in that property." *Id*. (cleaned up).

To prevail on a § 1983 unlawful seizure claim, a plaintiff must prove that the government unreasonably seized property. *Id*. at 71; *see Bishop v. Cnty. Of Macon*¸ 620 F. App'x 148, 149 (4th Cir. 2015) (unpublished). In this, as in other contexts, the reasonableness determination reflects a "careful balancing of governmental and private interests." *Soldal*, 506 U.S. at 71 (quoting *New Jersey v. T.L.O.,* 469 U.S. 325, 341 (1985)). When officers seize items pursuant to a court order, a showing of unreasonableness is "a laborious task indeed." *Id*.

This is particularly so because government actors, like the defendants here, are entitled to qualified immunity from civil liability if their conduct does not violate clearly established constitutional rights. *Trulock v. Freeh*, 275 F.3d 391, 399 (4th Cir. 2001). In deciding whether a state employee is entitled to qualified immunity, the Court determines (1) whether the facts alleged or shown by the plaintiff establish a violation of a constitutional right and (2) whether that right was "clearly established" at the time of the defendant's alleged misconduct. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009).

The Fourth Amendment requires a search or seizure order to "particularly describe[e]" the "things to be seized." U.S. CONST. amend. IV. This rule applies to search warrants issued in the criminal law context and to orders, like the one here, issued in the regulatory context. *New York v. Burger*, 482 U.S. 691, 699 (1987); *Camara v.*

5

*Mun. Court of San Francisco*, 387 U.S. 523, 534 (1967). When there is a warrant or court order, the government is not entitled to a general "exploratory rummaging in a person's belongings" and must confine the seizure to authorized items. *United States v. Dargan*, 738 F.3d 643, 647 (4th Cir. 2013) (cleaned up).

"The scope of a search conducted pursuant to a warrant is defined objectively by the terms of the warrant and the evidence sought, not by the subjective motivations of an officer." *United States v. Williams*, 592 F.3d 511, 522 (4th Cir. 2010) (cleaned up). The terms of the warrant are not to be interpreted in a "hypertechnical" manner. *Id.* at 519 (quoting United *States v. Robinson,* 275 F.3d 371, 380 (4th Cir. 2001)). Rather, they should be read with a "commonsense and realistic" approach, *United States v. Ventresca,* 380 U.S. 102, 108 (1965), to avoid turning a search warrant into a "constitutional straight jacket." *United States v. Phillips*, 588 F.3d 218, 223 (4th Cir. 2009). "While the constitutional protection cannot demand perfection, any tolerance of imperfection does not give officers free rein to ransack and take what they like." *Williams*, 592 F.3d at 520 (cleaned up).

### 3. Analysis

#### a. The Initial Seizure

The state court seizure order explicitly authorized the defendants, acting on behalf of the Commissioner of the DOI, "to take possession and control of all of the property, books, accounts, documents, and other records" of Cannon "and of the premises occupied by [Cannon] for the transaction of its business." Doc. 20-1 at 57. To state the obvious, anything seized that was within the scope of this court order was not illegally seized and

6

there was no constitutional violation.  To state the equally obvious flip side, court orders and warrants do not authorize seizure of items that are not described or identified within the terms of the order or warrant.

All of Mr. McClain's personal property that he asserts was unlawfully seized was located on Cannon's business premises at the time of the seizure and, with the possible exception of his sunglasses, would reasonably and objectively appear to be covered by the order.  Persons executing court seizure orders are only required to act reasonably, not perfectly, in the execution of those orders.  *Williams*, 592 F.3d at 519–20.  Computers, smart phones, cameras, a motorized coupon dispenser, hard drives, television monitors, a CD/DVD replicator, business signs, and software "written specifically for the bail industry" are the kinds of property that would be likely to belong to a surety bail bond business, *see* Doc. 20-1 at ¶ 61, and seizure was specifically authorized by the court order.  *Id*. at 57 (authorizing seizure of all records stored by electronic means and all "property").

Similarly, the court order authorized the Commissioner to take possession of all "books, papers, records, data bases, printouts and computations," belonging to Cannon. *Id*. at ¶ 19, pp. 57–58.  Given Mr. McClain's role in the business, the nature of the financial irregularities at issue, and the fact that these records were found on Cannon's business premises, seizure of the mounds of paper records was appropriate—at least until the defendants could determine whether the documents belonged to Cannon or some other entity or person.  *Williams*, 592 F.3d at 519–20 ("When a search requires review of a large collection of items such as papers, it is certain that some innocuous documents

7

will be examined . . . to determine whether they are, in fact, among those papers authorized to be seized." (cleaned up)); *Phillips*, 588 F.3d at 227 (holding that it was reasonable for officers to believe they had authority to seize similarly titled documents that were later found to be outside the terms of their warrant).

And the court order authorized seizure of all "property" belonging to Cannon, which could easily cover miscellaneous items such as keys, the drone, pocketknives, badges, and collectibles. Doc. 20-1 at ¶ 61. The only item Mr. McClain identifies that would not immediately appear covered by the court order is a pair of sunglasses, and even those might have been purchased with Cannon funds, given the underlying financial improprieties alleged and verified. *See id.* at p. 38 ¶¶ 55–57 (alleging inadequacies of Cannon's financial records), p. 39 ¶¶ 59–61 (alleging that multiple persons had access to Cannon debit cards, with little oversight of purchases and that checks were written without requiring receipts showing a business purpose).

In view of the verified petition's allegations of financial irregularities, including the likelihood that Cannon funds were used to buy items for personal and not business use, *see, e.g.*, *id.* at p. 39, it was objectively reasonable for the defendants to believe that all of the seized items were purchased or owned by Cannon and therefore covered by the seizure order.

"Reasonableness does not, by definition, entail perfection;" it requires "some latitude for honest mistakes." *Phillips*, 588 F.3d at 227 (quoting *Maryland v. Garrison*, 480 U.S. 79, 87 (1987)); *see also Maciariello v. Sumner*, 973 F.2d 295, 298 (4th Cir. 1992) ("Officials are not liable for bad guesses in gray areas; they are liable for

8

transgressing bright lines."), *cert. denied sub nom. Maciariello v. City of Lancaster*, 506 U.S. 1080 (1993). Based on "the information available to the [defendants] at the time of the search" as set forth in the proposed amended complaint, the defendants acted reasonably in their seizure of the personal property Mr. McClain says belongs to him. *Phillips*, 588 F.3d at 227.

Mr. McClain contends that his vocal objections throughout the seizure and the clear labelling of files and notebooks as containing documents unrelated to Cannon or as belonging to him personally should have given the defendants notice that they were taking property that did not belong to Cannon. Doc. 20-1 at ¶¶ 57, 64. The defendants were not required to accept such labels at face value, nor were they required to accept as true Mr. McClain's assertions of personal ownership, especially when many of the items could easily have belonged to Cannon. *See Williams*, 592 F.3d at 522 ("Surely, the owner of a computer, who is engaged in criminal conduct on that computer, will not label his files to indicate their criminality."). Moreover, the court order relied on the verified petition, which contained extensive indicators of fraud and misuse of business funds for non-business expenses. The proposed amended complaint, which incorporates the verified petition and court order, shows that the defendants acted in an objectively reasonable manner when they interpreted the court order broadly in determining whether financial documents and property belonged to Cannon.

Mr. McClain says in his brief that the "Defendants knew the Court's *ex parte* order itself, was based upon false information." Doc. 23 at 9. This allegation does not

9

appear in the proposed complaint[1] and "[i]t is well-established that parties cannot amend their complaints through briefing." *So. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 184 (4th Cir. 2013). And in any event, conclusory assertions are insufficient to meet the high threshold needed to overcome qualified immunity on a theory that the underlying warrant was defective. *See Messerschmidt v. Millender,* 565 U.S. 535, 547–48 (2012) (nothing the high threshold to overcome qualified immunity on a theory that the underlying warrant was defective).

Mr. McClain also relies on the Supreme Court's decision in *Malley v. Briggs*, 475 U.S. 335, 345 (1986), throughout his brief for multiple propositions that the case does not seem to support. *See, e.g.*, Doc. 23 at 8–10. In *Malley*, the Supreme Court rejected an argument that the act of applying for a warrant is *per se* objectively reasonable if the applying officer believes that the facts alleged in her affidavit are true. *Malley*, 475 U.S. at 345. The Court explained that an officer applying for a warrant may not simply "rely on the judgment of a judicial officer in finding that probable cause exists and hence issuing the warrant." *Id*. Instead, the officer must "exercis[e] reasonable professional judgment" in deciding whether to apply for the warrant in the first place in order to "minimize [the] danger" of an unlawful arrest. *Id*. at 345–46.

---

[1] Mr. McClain claims in his reply brief that his "amended complaint plainly alleges" this point, Doc. 23 at 9, but the only paragraph he cites in support refers to an allegation from the verified petition describing Cannon's inability to make good on certain state bonds. Doc. 20-1 at p. 43 ¶ 80. Whether or not the Court was obliged to search through the proposed complaint's 70 pages to locate this allegation, *see generally, Vannoy v. Federal Reserve Bank*, 827 F.3d 296, 302 n. 4 (4th Cir. 2016), the Court did look. If this based-on-false-information claim is buried somewhere in the proposed amended complaint, the Court did not see it.

10

Here, Mr. McClain does not allege that any of the four defendants applied for the seizure order. *See* Doc. 20-1 at ¶ 17 (alleging that DOI Commissioner Mike Causey filed the petition for rehabilitation and seizure). He alleges that one of the defendants, Mr. Trendel, executed a "Verification to the Seizure Order," *id.* at ¶ 18, but he makes no allegation that Mr. Trendel failed to exercise reasonable professional judgment in executing that verification. To the extent that Mr. McClain relies on *Malley* for a different proposition, his argument is unclear.

The facts as alleged do not show a constitutional violation, as all of the items seized were objectively covered by the court order authorizing the seizure. The defendants had no constitutional duty to accept Mr. McClain's assertions of personal ownership given the scope of the order, the location of the seized items on Cannon's business premises, and the underlying reasons for the seizure order. The defendants would be entitled to qualified immunity on this claim if the proposed amended complaint were to be filed, so the amendment would be futile.

### b. The Continuing Possession

Mr. McClain makes the separate contention that the "continued possession of property invalidly seized is a continuing deprivation." Doc. 23 at 9–10; Doc. 20-1 at ¶ 74. Mr. McClain has cited no case law to show that the continued retention of lawfully seized property violates a clearly established right under the Fourth Amendment. The Court's own review of the cases show that the Fourth Amendment right that Mr. McClain asserts was violated here was not clearly established, for reasons explained in *Tinsley v. Wight*, No. 7:09-2455-SB, 2012 WL 5305980, at *10 (D.S.C. Mar. 28, 2012) (finding

11

defendants were entitled to qualified immunity on Fourth Amendment claim for continuing retention of property and collecting cases).[2]

The Court need not determine whether the continued possession of Mr. McClain's property constitutes a separate violation of the Fourth Amendment. It is enough to say that the law is not clearly established as to Mr. McClain's purported right and that the defendants would be entitled to qualified immunity on this aspect of the proposed claim for that reason.

## B. Remaining State Claims

As the Court stated in its original order, *see* Doc. 19 at 13–14, the district courts of the United States are courts of limited subject matter jurisdiction. *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 552 (2005). Their original jurisdiction is limited by the Constitution and by congressional statute. *Id*. Once a district court has established original jurisdiction over at least one claim, it has supplemental jurisdiction over any additional claims that are part of the same case or controversy. 28 U.S.C. § 1367(a). A district court may decline to exercise supplemental jurisdiction if it has dismissed all

---

[2] The Court has no obligation to undertake legal research that a litigant has chosen not to present. *See Cathey v. Wake Forest Univ. Baptist Med. Ctr.*, 90 F. Supp. 3d 493, 509 (M.D.N.C. 2015). But the Supreme Court has noted in dicta that if items are seized that are later determined not to be covered by the court order, the government should promptly return them. *See Andresen v. Maryland,* 427 U.S. 463, 482 n.11 (1976). So, the Court did spend some time going down various rabbit holes to be sure it was fairly evaluating this claim. Without writing a law review article about the uncertain nature of this claim, many circuits have held that the due process clause is at issue for such claims, not the Fourth Amendment, as the discussion in *Tinsley* shows. *See, e.g.*, *Tinsley*, 2012 WL 5305980 at *12. And even when outright personal theft is alleged, which it was not here, courts have often found qualified immunity for Fourth Amendment claims. *See generally Saunders v. Baltimore City Police Dep't*, No. CV CCB-19-551, 2020 WL 1505697, at *4 (D. Md. Mar. 30, 2020) (collecting cases where theft was alleged and qualified immunity was appropriate but declining to dismiss case on specific facts alleged).

12

claims over which it has original jurisdiction. *Id*. § 1367(c)(3). Because Mr. McClain's Fourth Amendment claim would be futile if filed, the Court would also decline to exercise supplemental jurisdiction over the remaining state tort claims.

It is **ORDERED** that the motion to amend, Doc. 20, is **DENIED**.

This the 1st day of April, 2021.

                                                  UNITED STATES DISTRICT JUDGE